[redacted]

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 2:25-CV-00667-JRG |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. | § | |
| and SAMSUNG ELECTRONICS | § | JURY TRIAL DEMANDED |
| AMERICA, INC. | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**NETWORK-1'S MOTION TO COMPEL SAMSUNG'S RESPONSE TO INTERROGATORY NO. 9 AND PRODUCTION OF FINANCIAL INFORMATION RELATING TO ACCUSED PRODUCTS**

[redacted]

# I. INTRODUCTION

Plaintiff Network-1 Technologies, Inc. ("Network-1" or "Plaintiff") moves the Court for an order compelling Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") to produce complete financial information regarding the Accused Products in accordance with the Court's Discovery Order, Dkt. 31, and in response to Network-1's Interrogatory No. 9. The Accused Products include Samsung mobile devices (phones and watches) that use Network-1's patented eSIM and 5G technologies, and the requested financial information is both relevant and necessary to the calculation of damages.

In response to Samsung's Interrogatory No. 11 (which sought the factual and legal bases for Network-1's damages claim), Network-1 stated it "anticipates that its expert's determination of a reasonable royalty will be based on the application of the analysis set forth and approved in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 318 F. Supp. 1116, 1120, 166 USPQ 235, 238 (S.D.N.Y. 1970)…[in addition to] other standard, recognized, and established methodologies…." Ex. A.

Network-1's Interrogatory No. 9 sought financial information for each Accused Product, including, *inter alia*, gross sales revenues in dollars, gross margin, net margin, published or average sales prices, post-sale revenues, and cost information. Ex. B. Rather than provide a written response, Samsung identified Excel spreadsheets produced as SAMS396-0089754-757 under Rule 33(d). Ex. B. Samsung's spreadsheets, however, ***do not provide*** gross sales, gross or net margin, published or average sales prices, post-sale revenues, or detailed costs and ***only disclose*** quantities sold, net sales, costs of goods sold (COGS), and operating expenses. Even more problematic, Samsung's spreadsheets reveal that [redacted]

[redacted]

[redacted]

Network-1 raised the deficiencies in Samsung's document production and response to Interrogatory No. 9 by letter on September 11, 2026. *See* Ex. C. Specifically, Network-1 asked Samsung to provide the information sought, supplement its response to Interrogatory No. 9 through its fiscal Q2 of this year, and provide information regarding Samsung's discounting, incentives, and/or rebates on the Accused Products—all of which should have been produced absent a written discovery request under Section 3(b) of the Court's Discovery Order, Dkt. 31, months ago.

Samsung stated on September 23 that its response to Interrogatory No. 9 was "complete and sufficient" and described the additional information requested by Network-1 as "irrelevant, disproportional to the needs of this case, or duplicative with the information already produced." Ex. D. As to information regarding Samsung's discounting, incentives and rebates, Samsung stated that this "information is already accounted for in the data contained in the spreadsheets Samsung produced." Ex. D. On October 9, Network-1 sent another letter, in which it reiterated that Samsung's Rule 33(d) response did not contain the information requested in Interrogatory No. 9, asked Samsung to cure its discovery deficiencies, cited extensive case law (including from this Court) establishing the relevance of the financial information sought, and asked for a response by October 14 or Samsung's availability for a meet and confer. Ex. E. Samsung ignored this correspondence, and on October 21, Network-1 was forced to ask for a lead-local meet and confer.

During the parties' October 30 meet and confer, counsel for Samsung stated: (1) its client had never produced the information sought by Network-1 in a case, (2) the information provided was sufficient to calculate gross margins and followed regular accounting practices, and (3) they would ***need to ask Samsung if it tracked gross sales revenues***, as Network-1 believes it must.

[redacted]

Counsel for Samsung also revealed that the standalone "net sales" numbers about which Network-1 had been concerned had a simple explanation: [redacted] Thus, Samsung's counsel admitted that recorded sales and various deductions reflected in the spreadsheets might be wholly unrelated in any given reporting period. Counsel for Samsung suggested that Network-1 could seek deposition testimony on each such anomaly in lieu of production of further data. Network-1 noted that GAAP accounting practices do not constrain the *Georgia-Pacific* analysis or limit discovery in this case and questioned why counsel had not previously asked Samsung if it tracked gross revenues. Samsung had no response. While the parties met and conferred in an attempt to resolve their dispute, they reached an impasse, necessitating the filing of this Motion and the Court's intervention.

## II. LEGAL ARGUMENT

### A. Samsung's complete, unburdened financial data is relevant and proportional to the needs of the case and should have been produced without a discovery request, Dkt. 31, ¶ 3(b), many months ago.

Samsung's characterization of the requested financial data as "irrelevant" cannot be squared with case law because gross revenues, gross and net profit margins, sales prices, cost breakdowns, and post-sale revenues bear directly on the hypothetical negotiation and at least *Georgia-Pacific* factors 6, 8, and 10-13. Nor can it be deemed disproportionate to the needs of this case. Indeed, Federal Circuit Judge Bryson, sitting by designation in the Eastern District of Texas, found that "information regarding ***sales and pricing*** is key to determining the value of the patented [invention]" and "***is the starting point*** of any damages analysis." *Sycamore IP Holdings LLC v. AT&T Corp.*, 2017 WL 3719978, at *2 (E.D. Tex. May 22, 2017) (emphasis added); *see also Fractus, S.A. v. ADT LLC*, C.A. No. 2:22-cv-00413-JRG, Dkt. 80 (E.D. Tex. Dec. 14, 2023) (ordering defendant to supplement interrogatory response to include, for each subscription service offered with accused product, revenue received, "complete description of all costs incurred," and

[redacted]

"gross profits, contribution profits, operating profits, and net profits" generated).

Courts in this District routinely compel this precise type of discovery. For example, in *Mobile Micromedia Sols. LLC v. Nissan N. Am., Inc.*, 2007 WL 9724763, at *2 & n.1 (E.D. Tex. Sept. 26, 2007), the court ordered defendant Nissan to supplement its responses to plaintiff's interrogatories by providing, "in the itemized fashion set forth and requested," gross and net unit sales, gross and net dollar sales, average unit gross and wholesale prices, total and average unit cost of goods sold, total gross and average profit margins, and total net and average profit margins. The court rejected Nissan's contention that such information was "not relevant or necessary" for plaintiff to establish its alleged damages. *Id.* at *1-*2

In *ICON Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 10677745, at *3-*4 (E.D. Tex. Mar. 16, 2009), the court ordered defendant to produce sales volumes, prices and pricing structures, revenues and expenses, gross and net profits, sales forecasts, budgets, and documents defendant relied upon in creating financial summaries for the accused products. The court found such information was relevant to the claims and defenses in the lawsuit. *Id.* at *4.

Finally, in *LaserDynamics, Inc. v. Asus Comput. Int'l*, 2009 WL 153161, at *5 (E.D. Tex. Jan. 21, 2009), the court ordered defendants to produce documents used to create financial summaries; documents reflecting defendants' manufacturing capacity, pricing, costs, and product returns; and agreements between defendants and third parties pertaining to the accused devices. The court overruled defendant Asustek's relevancy objection to plaintiff's interrogatory, which asked Asustek to "state the cost (fixed and variable) to Asustek for each such drive and the price for which each such drive was sold, if sold, or offered for sale, if offered for sale and [to] identify all [supporting] documents …," and ordered Asustek (and all other defendants) to produce business documents that reflected the cost basis for each accused product, including financial

[redacted]

information needed to discern profitability. *Id.* at *3 & n.3.

Like the defendants in each of those cases, Samsung should be ordered to fully answer Interrogatory No. 9 and produce the requested SKU-level data, as the requested information is directly relevant to the *Georgia-Pacific* analysis and necessary to establish Network-1's damages. Samsung cannot shirk its discovery obligations by hiding behind Rule 33(d) because the documents Samsung has identified to date do not include the requested information. *See Personal Audio, LLC v. Apple, Inc.*, 2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) ("Rule 33(d) simply does not justify Apple's failure to fully answer [plaintiff's] interrogatories").

**B. Samsung's embedded discounts, incentives, and rebates must be fully disclosed.**

Samsung takes the position that discounting, incentives, and rebates are "already accounted for" in the spreadsheets Samsung produced. But that is the problem, not the answer. Those adjustments are embedded in Samsung's "net sales" figures without being disclosed or quantified, producing millions of dollars in net-negative sales that were calculated in a black box. Network-1 is entitled to see the components underlying the net figures—including gross revenue, unit and average sales price, and any discount, rebate, or other incentive—as separate, discoverable data points. *See, e.g., United Therapeutics Corp. v. Liquida Techs., Inc.*, 2024 WL 4791943, at *3 (D. Del. Nov. 12, 2024) (ordering defendant to produce forecasts and projections for accused product, including anticipated sales, revenue, profits, market share, pricing, rebates, discounts, chargebacks, and promotions); *Indacon, Inc. v. Facebook, Inc.*, 2012 WL 12538968, at *6 (W.D. Tex. Feb. 14, 2012) (ordering defendant to produce its pricing policies, including price lists, discounts, original prices, price mark-ups, price mark-downs, other price adjustments, and pricing or revenue strategies or methods by which revenue was generated in connection with the accused products); *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 213 (D. Col. 2010) (ordering defendant to produce documents on pricing strategies; pricing and profit margins; factors in determining prices;

[redacted]

projected and actual profit margins; and analysis of market conditions and pricing). Samsung should be ordered to disclose all relevant pricing information, including these deductions, by SKU.

### C. Samsung may not impose its fully-burdened GAAP financials on Network-1's compensatory patent damages calculation.

Samsung has taken the position that it has already produced all data needed to calculate gross profits, discounts, rebates, and incentives and thus, further granular data would be duplicative. For example, Samsung claims that "gross profits" can be calculated with the information provided because *GAAP permits* certain types of returns, allowances, and discounts to be deducted from gross sales, resulting in a lower "net sales" number prior to the subtraction of COGS; without such deductions, the calculation would simply be "gross profit = gross sales – COGS." So too for discounts, rebates, and incentives – because they are "already accounted for" in Samsung's "net sales" (never mind that Samsung did not produce the data inputs themselves). But this position should be rejected because it confounds two fundamentally different ways of looking at an infringer's financial data: financial reporting vs. compensatory patent damages. That is, GAAP governs the manner in which a company reports its financial results for consistency whereas the hypothetical negotiation seeks to achieve full compensation to the patentee for the value of its invention, irrespective of the infringer's (mis)management of certain cost burdens.

Moreover, the Federal Circuit rejected Samsung's position in *Finjan, Inc. v. Secure Computing Corp.*, which expressly affirmed the jury's reliance on expert testimony that "remove[d] one-time costs and other expenses not related to product manufacture, sales, and marketing" from the calculation of profitability for the accused products; these cost exclusions "converted" defendant's financial statement losses of $17.8M into a profit of $28 million. 626 F.3d 1197, 1210 (Fed. Cir. 2010). The Federal Circuit has also made clear that reasonable royalty damages are neither capped by an infringer's losses, *Stickle v. Heublien, Inc.*, 716 F.2d 1550, 1560-

[redacted]

61 (Fed. Cir. 1983), nor by their net profit margin (or profit margin at any calculated level), *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011) (citing *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *State Indus., Inc.*, 883 F.2d at 1580)).

Samsung may not hide behind GAAP to withhold relevant gross sales data; discrete data for discounts, allowances, and returns; and discrete data for all categories of costs, including routine subcategories within costs of goods sold and operating expenses.

### D. Samsung tracks and relies upon SKU-level gross sales, sales returns, allowances, discounts (incentives, rebates, etc.)

Finally, Samsung's production of net sales by SKU contradicts any potential claim that it does not track gross sales revenues by SKU because

Net Sales = Gross Sales – Sales Returns – Allowances – Discounts

*See* https://www.investopedia.com/terms/n/netsales.as, last visited Nov. 2, 2026. Samsung clearly cannot calculate SKU-level "net sales" (which it has produced) without tracking and inputting SKU-level gross sales, sales returns, allowances, and discounts (none of which it has produced). Thus, it is clear from Samsung's own spreadsheet that the data sought by Network-1 is both tracked and relied upon by Samsung in the ordinary course of its business and must be produced.

## III. CONCLUSION

For the reasons set forth herein, Network-1 respectfully requests that the Court grant its motion and order Samsung to fully answer Interrogatory No. 9 and to produce the requested financial information, including SKU-level gross sales revenues, gross and net profit margins, sales prices, cost breakdowns including routine subcategories within COGS and operating expenses, and post-sale revenues, as well as embedded discounts, incentives, and rebates, and all other data that affect, influence, or contribute to Samsung's standalone "net sales" numbers.

[redacted]

Dated: November 10, 2026

Respectfully submitted,

*/s/ Demetrios Anaipakos*
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Steven T. Jugle
Texas Bar No. 24083280
sjugle@aatriallaw.com
Amanda Woodall
Texas Bar No. 24028139
awoodall@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
William B. Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000

[redacted]

Facsimile: (713) 221-2021

Claire Abernathy Henry
Texas Bar No. 24053063
claire@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff Network-1 Technologies, Inc.*

**CERTIFICATE OF CONFERENCE**

On October 30, 2026, counsel for Network-1 and counsel for Samsung met and conferred to discuss the deficiencies identified in Samsung's response to Interrogatory No. 9 and the issues addressed in related correspondence. The parties could not reach agreement and their discussion ended in an impasse, necessitating the filing of the instant motion.

*/s/ Demetrios Anaipakos*__________
Demetrios Anaipakos

[redacted]

[redacted]

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 10, 2026, a copy of the foregoing was served electronically via electronic mail to all counsel of record who have consented to electronic service.

*/s/ Demetrios Anaipakos*_____
Demetrios Anaipakos