IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.;<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 2:25-cv-667-JRG<br><br>Jury Trial Requested |

**PLAINTIFF NETWORK-1'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. "receiving the symmetric key" ('780 claim 1, '094 claim 1) .....1

A. The claims do not require—and indeed contradict—Samsung's construction. .....1

B. The specification does not clearly disavow receipt from the subscription manager. .....1

C. Samsung's IPR positions confirm the ordinary scope of the claim. .....4

D. The Court should adopt plain and ordinary meaning. .....5

II. "cryptographic parameters" ('869 claims 1, 4, 18) .....5

A. Neither "Input" Nor "Settings" Excludes Keys .....6

B. The Claims Do Not Exclude Keys .....7

C. The Specification Identifies a Key as a Cryptographic Parameter .....8

D. Samsung's Remaining Evidence Does Not Support Its Construction .....10

## TABLE OF AUTHORITIES

### Cases

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) .......... 2

*Becton, Dickinson & Co. v. Tyco Healthcare Grp. LP*,
616 F.3d 1249 (Fed. Cir. 2010) .......... 8

*Continental Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019) .......... 2

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014) .......... 2

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) .......... 2

*In re Abott Diabetes Care, Inc.*,
696 F.3d 1142 (Fed. Cir. 2012) .......... 4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .......... 1, 2

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) .......... 9

*Openwave Sys. v. Apple Inc.*,
808 F.3d 509 (Fed. Cir. 2015) .......... 4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .......... 1

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
130 F.4th 1372 (Fed. Cir. 2025) .......... 9

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
242 F.3d 1337 (Fed. Cir. 2001) .......... 4

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
944 F.3d 901 (Fed. Cir. 2019) .......... 4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) .......... 2

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) .......... 1, 2

*Unwired Planet, LLC v. Apple Inc.*,
829 F.3d 1353 (Fed. Cir. 2016) .......... 1

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) .......... 3

## I. <u>"receiving the symmetric key" ('780 claim 1, '094 claim 1)</u>

| Network-1's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning | "(g) receiving the symmetric key **from a source other than the subscription manager**" |

### A. The claims do not require—and indeed contradict—Samsung's construction.

Samsung concedes that "limitation 1(g) does not expressly recite the source of the symmetric key." Dkt. 77 ("Resp.") at 11. Nonetheless, Samsung argues the claim language must be changed because "the specification consistently identifies the MNO, not the subscription manager, as the source." *Id.* Samsung seeks to re-draft the claims by importing a limitation from the specification into the claims, which is a cardinal sin of claim construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*); *see also Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358–59 (Fed. Cir. 2016).

Dependent claim 7 further confirms that Samsung's construction is wrong. It recites that the "subscription manager system stores [] the symmetric key before step (a)." '780 at 81:14-16; '094 at 81:16-18. While that dependent claim does not itself identify the sender in step 1(g), it directly contradicts Samsung's premise that the subscription manager must be categorically excluded from the symmetric-key side of the claimed architecture. Where the claims expressly place the symmetric key at the subscription manager before the claimed sequence begins, the Court should not rewrite the independent claims to forbid receipt from that same system. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910–11 (Fed. Cir. 2004).

### B. The specification does not clearly disavow receipt from the subscription manager.

Samsung argues the specification disavows receiving the symmetric key from the subscription manager (*see* Resp. at 6-11), while ignoring the "exacting" standard for disavowal. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012); *GE Lighting*

*Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). Disavowal requires "expressions of manifest exclusion or restriction" or a clear and unmistakable statement that the invention does not include the disputed feature. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325, 1327 (Fed. Cir. 2002); *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371–72 (Fed. Cir. 2014). It is not enough that the specification describes only one embodiment, or even that every disclosed embodiment contains the limitation sought to be imported. *Liebel-Flarsheim*, 358 F.3d at 906; *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012).

Nothing in the specification comes close to disavowal. Samsung principally relies on the Background section, which discusses myriad "needs" that "exist" at the time. Resp. at 7-8 (citing '780 at 3:13-4:38). But not one of those passages clearly and unmistakably states that the "invention requires" each of those exemplary needs to be met (or similar statements of disavowal like "only," "must," "all embodiments," or "essential"). *Id.* Rather, the Background simply describes various concerns with the state of the art. A nonexclusive description of problems in the art is not an unmistakable disavowal of claim scope. *See Thorner*, 669 F.3d at 1366; *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797–99 (Fed. Cir. 2019).

Samsung's reliance on the Summary section similarly fails. Resp. at 8-9. The Summary describes multiple embodiments and uses permissive language: the eUICC "can" support secure decryption or derivation of key K under MNO control; distribution of the eUICC profile "may" be outside the MNO's control; and the MNO "can" send the symmetric key and "can" retain control over key K. '780 at 4:63–66, 6:24–29, 6:44–46. That permissive language describes exemplary ways to practice the invention; it does not clearly exclude the subscription manager as a source for the symmetric key. *See Continental Circuits*, 915. F.3d at 798 (statement that invention "can" be carried out by a new use of a dielectric was not disavowal).

Samsung is also wrong that, without its negative limitation, the claim "recreate[s] the very security vulnerability the patents sought to address." Resp. at 9–11. As issued, claim 1 details a secure provisioning sequence: the eUICC "receives" an "encrypted profile" with two "portions," 1(f), (h)-(i); "derives" a "profile key" through a key exchange, 1(e); separately "receives" a "symmetric key," 1(g); and then "decrypts" each portion of the encrypted profile using the various keys, 1(h)-(i). '780 at 80:27–62; '094 at 80:32–67. Because one key is derived and the other key is received, the profile is not exposed merely because the claim does not name the sender of the symmetric key in 1(g). Samsung's argument confuses a preferred MNO-delivery implementation with a claim-wide source exclusion.

As detailed in Network-1's opening brief, the specification refutes Samsung's categorical theory. It expressly states that the MNO "could operate" the subscription manager and the MNO "could also function as" the subscription manager. '780 at 11:30–38, 37:40–43. In that disclosed configuration, Samsung's phrase "other than the subscription manager" becomes illogical: a symmetric key sent by the MNO would also be sent by that same entity functioning as the subscription manager. The specification also shows that the subscription manager can deliver a symmetric decryption key—the eUICC profile key 107b—by asymmetric ciphering or key exchange. '780 at 11:47–60. Those disclosures contradict Samsung's claim that the intrinsic record clearly and unmistakably excludes subscription-manager delivery of a symmetric key. Samsung's expert declaration cannot supply the clear intrinsic evidence required to add a negative limitation. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583–84 (Fed. Cir. 1996).

Samsung's cases involved a substantially different intrinsic record. *Techtronic* turned on a specification that repeatedly identified the prior-art problem as locating the passive infrared detector in the garage-door opener's head unit and consistently described the claimed improvement

as moving that detector into the wall console. 944 F.3d 901, 907–10 (Fed. Cir. 2019). Samsung identifies no comparable repeated, invention-wide statement here. The claims themselves point the other way: 1(f) names the subscription manager as the source of the encrypted profile, 1(g) names no specific source for the symmetric key, and dependent claim 7 requires that the subscription manager system stores the symmetric key.

*SciMed* and *Openwave* are even further from this intrinsic record. *SciMed* involved express "all embodiments" language and criticism of side-by-side lumens; the specification told the public that the coaxial structure was the "basic sleeve structure for all embodiments of the present invention contemplated and disclosed herein." 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). *Openwave* involved a specification "rife with remarks" disparaging devices containing computer modules and a patentee concession that the specification repeatedly criticized the excluded architecture. 808 F.3d 509, 514–17 (Fed. Cir. 2015). Samsung points to no analogous "all embodiments" statement, no repeated disparagement of receipt from a subscription-manager, and no concession that the specification excludes that source.

Nor does *Abbott* help Samsung. *Abbott* arose in PTO reexamination under the broadest-reasonable-interpretation standard, and the Federal Circuit relied on claims and a specification that repeatedly, consistently, and exclusively depicted cable-free sensors while disparaging external cables. 696 F.3d 1142, 1148–50 (Fed. Cir. 2012). Here, by contrast, the claim language does not suggest Samsung's exclusion, the dependent claims undercut it, and the specification expressly contemplates the MNO operating or functioning as the subscription manager. That is not clear and unmistakable disavowal; it is intrinsic evidence contracting the proposed disavowal.

### C. Samsung's IPR positions confirm the ordinary scope of the claim.

Samsung told the PTAB in the IPR that "the claims of the '780 Patent place no limit on the

source of the claimed 'symmetric key.'" Ex. 9 ('780 IPR Petition) at 10. Samsung made that statement to support a written-description attack, but the premise is the same: limitation 1(g) is source-neutral. Samsung's attempt to "reserve" the right to take inconsistent positions in the IPR and district court (Resp. at 14) does not erase the ordinary scope Samsung attributed to the claim language when attacking priority.

Samsung's obviousness grounds confirm the point. Samsung's Response admits those grounds addressed the claims under Network-1's broader reading where the subscription manager delivered the symmetric key. Resp. at 13–14. Samsung cannot have it both ways: broad enough at the PTAB to support invalidity, but narrowed here via a negative limitation to avoid infringement.

### D. The Court should adopt plain and ordinary meaning.

The Court should adopt plain and ordinary meaning. The phrase "receiving the symmetric key" is readily understandable; the only dispute is Samsung's proposed source exclusion disclaimer. Under *O2 Micro*, the Court can resolve that dispute without replacing the claim language wholesale. The Court need only make clear that "receiving the symmetric key" is not limited to receipt from a source other than the subscription manager and does not exclude receipt from the subscription manager system. That clarification tracks the claim language, preserves the contrast between 1(f) and 1(g), respects dependent claim 7, and rejects the negative limitation Samsung cannot justify under the Federal Circuit's exacting disavowal standard.

## II. "cryptographic parameters" ('869 claims 1, 4, 18)

| Network-1's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning | "**input settings for cryptographic algorithms**" |

Samsung's construction replaces "cryptographic parameters" with "input settings for cryptographic algorithms." Network-1's opening brief identified three problems with that

construction: (1) it limits parameters to values that are both inputs and settings, which excludes disclosed parameters that are one but not the other; (2) it limits parameters to values used by an algorithm, which excludes disclosed parameters that govern the surrounding protocol; and (3) it carries an unstated exclusion of keys. *See* Op. Br. at 10-21. Samsung's Response confirms the third point. Samsung asks the Court to adopt its construction "as distinct from cryptographic keys," raising a claim scope dispute. *See* Resp. at 16-17. Samsung does not contend that the patentee defined the term or disclaimed claim scope. *See id.* at 23. The words of its construction do not exclude keys, and the specification identifies a key—algorithm token 190—as a cryptographic parameter. The Court should apply the plain meaning and reject Samsung's construction.

### A. Neither "Input" Nor "Settings" Excludes Keys

As written, Samsung's construction excludes disclosed cryptographic parameters that are settings but not inputs, and others that are inputs but not settings. *See* Op. Br. at 15-18. Samsung's expert, Dr. Rangan, explained that one specification passage "characterize[s] cryptographic parameters as ***inputs***," and that another "independently characterizes" them "as ***settings***." Ex. A ¶¶ 83-84. Samsung's construction "adopts" both phrases—"input into" and "settings for"—and combines them as "input settings." *Id.* ¶ 86. Samsung is effectively limiting this term to the overlap of two separate descriptions.

In response to Network-1's examples, Samsung confirmed that its phrase "'[i]nput settings' is a single category." Resp. at 20. It also explained that an "input" is anything "***supplied to*** an algorithm before it runs," and "'settings' are configuration values for the cryptographic algorithm . . . ." *Id.* Samsung offers no specific answer for the server addresses, key sources, and wireless-network values that are not input into any algorithm. *See* Op. Br. at 17; Resp. at 21. A key satisfies both halves of Samsung's definition. First, a key is an "input" because it is supplied

to an algorithm before it runs. *See* ’869 at 6:60-62 (“The key derivation function can use as input the derived module private key, the set of cryptographic parameters, and a key K network token.”). Samsung acknowledges as much. *See* Resp. at 24 (identifying “a key” as one of “two separate algorithm inputs”). That algorithms also generate keys does not change the result, because those keys are inputs to other algorithms. *See* ’869 at 7:20-23, 125:56-63. Second, a key is a “setting” as Samsung uses that word. It is no different from the random number generator “seed” that Samsung calls a “***setting[]*** for how the generator operates.” Resp. at 22.

Samsung then provided an alternate definition for its construction—“i.e., values that are ***input*** into the algorithm to ***define how it operates***.” Resp. at 26. A cipher key is such a value. *See* ’869 at 39:43-45 (“A secret ciphering algorithm 141h could select, mix, and append values from the cipher key and the plaintext in a secret or confidential manner in a plurality of rounds . . . .”). Nothing in “input settings for cryptographic algorithms” excludes keys, even as Samsung defines those words. Samsung is left with the dilemma Network-1 identified in its opening brief. *See* Op. Br. at 15. If “input settings” means what it says, it excludes disclosed parameters. *See id.* at 15-18. If it means what Samsung now says, it covers keys, and the exclusion Samsung seeks is a negative limitation that appears nowhere in its construction. *See id.* at 18-19.

Samsung’s “input settings” construction does nothing to clarify the “parameters” term for a jury. It replaces a term the specification uses about 360 times with a phrase the specification never uses. And the construction fails to support Samsung’s proposed exclusion of keys.

### B. The Claims Do Not Exclude Keys

Claim 1 recites “cryptographic parameters” separately from particular keys. Samsung relies on *Becton* to argue that the parameters therefore cannot include any key. *See* Resp. at 24. *Becton* does not go that far. There, the claim listed a “hinged arm” and a “spring means” as separate

elements, and the court held that the claim required a spring means "separate from the hinged arm." *Becton, Dickinson & Co. v. Tyco Healthcare Grp. LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010). Here, the same rule means only that the claimed parameters are not the specific keys recited in the claim, such as "key K," the "second module private key," the "network public key," and the "symmetric key." Every key in claim 1 is a specific key. The claim does not distinguish "cryptographic parameters" from keys generally.

Limitation 1(g) also shows that the parameters can include a key. Samsung's own evidence states that an ECDH key exchange takes three inputs: domain parameters, a private key, and a public key. *See* Resp. at 28 (citing SEC-1 § 3.3.1). Limitation 1(c) follows that structure, reciting a first ECDH key exchange "with the first module private key and the network public key." '869 at 148:15-17. Limitation 1(g) recites a second ECDH key exchange "with the second module private key and the cryptographic parameters." *Id.* at 148:24-26. Where limitation 1(c) recites a public key, limitation 1(g) recites the cryptographic parameters. Samsung's exclusion of keys would bar the parameters from including a public key for the second ECDH key exchange.

Finally, Samsung argues that Network-1's reading of the term covers "whatever is received from the first server and used in the ECDH step . . . ." Resp. at 24-25. That is what the claim requires. Limitation 1(b) identifies where the cryptographic parameters come from, and limitation 1(g) identifies how they are used. Samsung's generic key exclusion is unsupported by the claims.

### C. The Specification Identifies a Key as a Cryptographic Parameter

Samsung does not rely on lexicography or disavowal. *See* Resp. at 23. Instead, Samsung argues "consistent usage." *Id.* But the specification describes its examples as "illustrative as opposed to limiting." '869 at 43:4-8. The specification describes parameters as "data useful for the

operation of cryptographic algorithms . . . .” *Id.* at 85:57-60. A key is data useful for the operation of a cryptographic algorithm—indeed, ciphering algorithms require a key. *See id.* at 31:8-14.

The specification also identifies a key as a cryptographic parameter. Algorithm token 190 is a “cipher key.” *See id.* at 38:56-57, Fig. 1g. Algorithm token 190 “can be included in a subset of cryptographic parameters 126a,” which can be delivered in the eUICC profile. *Id.* at 142:21-24, 146:29-34. Samsung disputes neither point. *See* Resp. at 22-23. Instead, Samsung argues that the token is a key only for secret ciphering algorithm 141h and a parameter only for shared secret algorithm 141g. *See id.* The specification does not divide the token that way. It is *one* token: “an algorithm token 190 can also be used with other algorithms in a set of cryptographic algorithms 141 in addition to a shared secret algorithm 141g, including a secret ciphering algorithm 141h . . . .” ’869 at 37:14-17. And the cryptographic parameters “could also include parameters for . . . a shared secret algorithm 141g, and a secret ciphering algorithm 141h.” *Id.* at 43:62-66. Algorithm 141h accepts “an algorithm token 190 as a key.” *Id.* at 35:5-9.

Samsung’s other arguments are unavailing. Samsung describes a token as a “unit of data” whose contents depend on context. Resp. at 22. The same is true of a parameter—both are broad terms that can include a key. Samsung cites *Regeneron*, describing that case as approving an exclusion where the specification “nowhere” showed “a single component performing both functions.” *Id.* at 24 (quoting *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 130 F.4th 1372, 1382 (Fed. Cir. 2025)). Here, token 190 is both a key and a cryptographic parameter. Samsung’s “rise” analogy also fails. *See* Resp. at 23-24. Going up and going down are opposites. Parameters and keys are not—a key is a more specific kind of value. Excluding keys is a negative limitation that requires an “express disclaimer or independent lexicography.” *Omega Eng’g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Samsung identifies neither.

**D. Samsung's Remaining Evidence Does Not Support Its Construction**

Samsung quotes only the end of Dr. Rangan's IPR testimony. *See* Resp. at 30. The full sentence states: "Nakhjiri's encrypted profile includes 'security application algorithm codes, data and cryptographic keys', which a POSITA would have understood to be 'cryptographic parameters,' which include ECC parameters (curve ID and base point G) used later by the eUICC." Ex. 19 ¶ 94 (internal citations omitted). He then describes "a module identity and ***key K***" as "***known parameters*** to include in an encrypted eUICC profile." *Id.* ¶ 95 (emphases added). Samsung's own expert opined that cryptographic parameters can include keys.

Samsung's remaining evidence does not lead to a different result. SEC-1 describes elliptic-curve "domain parameters," which are one kind of parameter. Resp. at 28. The '401 Application is not in the '869 Patent's family, and Samsung does not address *Abbott Labs*. *See* Op. Br. at 22. Moreover, the applicant argued that Xu did not disclose the step of "receiving a set of parameters, wherein the set of parameters includes a value for an elliptic curve and a key length." Ex. 20 at SAMS396-0131476. That does not state that a key can never be a parameter. The '780 Patent is a different patent and specification. Finally, Network-1's subpoenas defined terms to obtain documents from non-parties, not to construe claims. Samsung does not propose that definition, and the definition does not exclude keys. *See* Resp. at 16.

The Court should adopt the plain and ordinary meaning of "cryptographic parameters" and reject Samsung's construction.

Dated: November 23, 2026

Respectfully submitted,

*/s/ Eric J. Enger*
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com

Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
Steve Jugle
Texas Bar No. 24083280
sjugle@aatriallaw.com
**ALAVI & ANAIPAKOS PLLC**
609 Main St, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric James Enger
Texas Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
William Brown Collier, Jr.
Texas Bar No. 24097519
wcollier@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
609 Main St., Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Andrea L. Fair
State Bar No. 24078488
andrea@millerfairhenry.com
Claire A. Henry
State Bar No. 24053063
claire@millerfairhenry.com
**MILLER FAIR HENRY PLLC**

1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)

**ATTORNEYS FOR NETWORK-1 TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 23, 2026, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record who are Filing Users of the Court's Electronic Filing System.

*/s/ Eric J. Enger*
Eric J. Enger